UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

In re:

RANDAL TODD LEWIS,

    Debtor.

_____/

Case No. GG 09-03818
Chapter 7

RANDAL TODD LEWIS,

    Plaintiff,

v.

REBEKA LYN LEWIS,

    Defendant.

_____/

Adv. Proc. No. 09-80321

## OPINION REGARDING EFFECT OF BAPCPA AMENDMENTS UPON CERTAIN BANKRUPTCY AND DIVORCE NONDISCHARGEABILITY ISSUES

Appearances:

John A. Potter, Esq., Grand Rapids, Michigan, attorney for Randal Todd Lewis, Plaintiff-Debtor.

Perry G. Pastula, Esq., Wyoming, Michigan, attorney for Rebeka Lyn Lewis, Defendant.

### I.    INTRODUCTION AND ISSUES.

Prior to BAPCPA,[1] there existed a well-settled body of authority regarding the intersection of bankruptcy law and state divorce law, including which debts

---

[1] "BAPCPA" contains the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, which was signed by the President on April 20, 2005. Most of the BAPCPA amendments became effective in bankruptcy cases filed on or after October 17,

were dischargeable or nondischargeable, regardless of whether the debts were categorized as "support" debts or "property settlement" debts.  BAPCPA modified numerous Bankruptcy Code provisions changing the law and the debtor-creditor balance relating to a number of domestic relations-bankruptcy issues.   In general, and similar to support obligations, property settlement provisions in state court divorce judgments are now almost always nondischargeable.  Further, the time limitation previously imposed to file an action to determine whether a property settlement is dischargeable or not and the prior requirement that the action be decided only by the bankruptcy court has been eliminated.  Because this case was filed after the effective date of BAPCPA, the court is required to interpret the applicable BAPCPA amendments and their effect in this adversary proceeding.

The court must interpret the applicable BAPCPA nondischargeable debt provisions contained in § 523(a)(5), § 523(a)(15) and § 523(c) of the Bankruptcy Code.  The specific issue before the court is whether the Debtor in this case may owe his (soon-to-be) ex-spouse a nondischargeable debt or not.

## II.    JURISDICTION.

The court has jurisdiction over the base case and this adversary proceeding. 28 U.S.C. § 1334. The bankruptcy case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.).   This adversary proceeding is a core proceeding because it

---

2005.   These amendments were codified in 11 U.S.C. §§ 101-1532, the "Bankruptcy Code."  References to the current Bankruptcy Code in this opinion are designated as "§ _____."  Also, the Bankruptcy Code sections are sometimes designated as "pre-BAPCPA" or "post-BAPCPA."

involves a determination regarding the dischargeability of a debt. 28 U.S.C. § 157(b)(2)(I). This opinion constitutes the court's findings of fact, which are established by the record, and the court's conclusions of law. FED. R. BANKR. P. 7052(a).

### III.    FACTS AND PROCEDURAL BACKGROUND[2].

Randal Todd Lewis, Plaintiff ("Debtor"), is married to Rebeka Lyn Lewis, Defendant ("Ms. Lewis").[3] In December 2008, and at about the time the Debtor became unemployed, Ms. Lewis filed a complaint for divorce in the State of Michigan, Kent County Circuit Court (the "state court"). On December 12, 2008, the state court held a hearing regarding Ms. Lewis' motion for temporary support. On December 23, 2008, the state court entered a "Temporary Order." For purposes of this adversary proceeding, the relevant provisions of the Temporary Order are:

1.    Ms. Lewis' request for spousal support was denied.

2.    Ms. Lewis was granted the exclusive use and possession of the marital home.

3.    During the pendency of the divorce proceeding, the Debtor was ordered to timely pay the first mortgage which encumbers the marital home.

---

[2] The Facts and Procedural Background are based upon this court's files including, but not limited to, the Debtor's schedules, the Debtor's legal memorandum and the Debtor's affidavit. The material facts are not contested.

[3] To the court's knowledge, the Debtor and Ms. Lewis remain married unless the state court granted a marriage dissolution during the pendency of this adversary proceeding.

4.   During the pendency of the divorce proceeding, Ms. Lewis was ordered to timely pay the second mortgage which encumbers the marital home.

5.   Regarding credit card debts, the Debtor was required to pay the minimum monthly payment on the MBNA debt; Ms. Lewis was required to pay the minimum monthly payment on the American Express debt; the Debtor and Ms. Lewis were each ordered to pay one-half of the minimum monthly payment on the Capital One debt; and the parties were prohibited from increasing their joint debts.[4]

In this adversary proceeding, the Debtor asserts that Ms. Lewis again sought spousal support in the state court on June 30, 2009. The state court denied Ms. Lewis' spousal support motion but stated "for purposes of clarifying terminology," that the Temporary Order requiring the Debtor to timely pay the first mortgage on the marital home was intended as "family support." (See state court Order, dated June 30, 2009, attached to the Debtor's adversary proceeding complaint as Exhibit B.)[5]

After the Debtor lost his job, he began receiving unemployment compensation in the amount of $1,569.00 per month. To add to his economic woes, on March 10, 2009, the Debtor was in a vehicle accident. His car was hit by a drunk driver. As a result of the collision, the Debtor suffered severe injuries, including a broken neck.

---

[4]   Although now unknown, this court believes, given the state court's Temporary Order, that the credit card debts are joint debts.

[5]   For purposes of deciding Ms. Lewis' motion for summary judgment, this court accepts the Debtor's assertion as true and correct.

- 4 -

Further economic misfortune occurred. Because of the vehicle accident, the Debtor's auto insurance company represented that the Debtor would begin receiving disability payments because of his inability to work. Later, that insurance company denied the disability claim. However, the Debtor's unemployment benefits were terminated because of the expected disability payments; the cessation of unemployment benefits caused the Debtor to receive no income for a period of time. Because of his injuries, the Debtor's ability to work in the future remains in doubt.

On March 31, 2009, the Debtor filed a voluntary chapter 7 bankruptcy case. Per the Debtor's schedules, the marital home is valued at $150,000.00. However, the aggregate mortgage debt totals nearly $190,000.00. Therefore, the Debtor and Ms. Lewis are "upside down" by about $40,000.00 on the marital home. The Debtor also lists approximately $46,000.00 in unsecured debt. Schedule F states the largest debt, owed to the Bank of America, for credit card purchases, is $38,479.00. The obligation is listed as a joint debt with Ms. Lewis.[6]

The Debtor has few assets. Other than exempt personal property, he has a "rollover" 401(k) IRA in the amount of approximately $24,000.00. The Debtor, as stated by his bankruptcy attorney, believes Ms. Lewis is attempting to achieve a "very favorable property settlement in the divorce case and then later filing her own bankruptcy."

---

[6] The Bank of America credit card debt is not addressed in the state court's Temporary Order, unless it is actually the American Express, the MBNA, or the Capital One debt.

On June 16, 2009, Ms. Lewis filed a motion to modify the automatic stay so she could continue the state court divorce action. The Debtor opposed Ms. Lewis' motion. On July 7, 2009, the Debtor's chapter 7 discharge was granted by this court. On August 26, 2009, this court modified the automatic stay thereby allowing the parties to continue the state court divorce proceeding and to permit the state court to dissolve the marriage, determine the support to be awarded (if any), and to divide the marital property. On September 6, 2009, the Debtor appealed this court's order which modified the automatic stay. This court believes the appeal is now pending before the United States District Court for the Western District of Michigan. However, no stay pending appeal has been granted.

Approximately two weeks after the discharge was entered in the base case, the Debtor, as plaintiff, instituted this adversary proceeding. The Debtor requests a determination that: (1) any obligation owed by the Debtor to Ms. Lewis is not a domestic support obligation within the meaning of § 523(a)(5) and that any such obligation is "discharged;" (2) any other obligation owed by the Debtor to Ms. Lewis is not covered by § 523(a)(15) and is also "discharged;" (3) Ms. Lewis' efforts to require the Debtor to pay obligations in the state divorce action violates the automatic stay; and (4) Ms. Lewis' continued efforts taken in the state court after the discharge was entered violates the § 524 discharge injunction.

Ms. Lewis filed her answer to the Debtor's Complaint on August 13, 2009, soon followed by her motion for summary judgment on August 17, 2009. On

August 20, 2009, this court entered its Scheduling Order Regarding Motion for Summary Judgment. On September 15, 2009, the Debtor responded to the motion and filed a legal memorandum and accompanying affidavit.

On September 23, 2009, this court heard argument of opposing counsel. At the conclusion of the hearing, Ms. Lewis' motion for summary judgment was taken under advisement.

## IV.   DISCUSSION.

Ms. Lewis' motion for summary judgment requests two straightforward determinations. First, she asserts the obligations imposed by the state court's Temporary Order are an exception to discharge under § 523(a)(15) and, second, she states she has not violated the automatic stay or the discharge injunction.

The Debtor's position is much more complicated and initially appears confusing. First, because the state court has only entered a "Temporary Order," the Debtor asserts that the order cannot be a property settlement obligation. Second, because the Debtor's discharge has been entered, the gist of the Debtor's assertions is that the state court is now unable to divide the marital property or impose any property division obligation. Third, the Debtor states that spousal support is not an issue. Last, the Debtor asserts the Temporary Order obligation is a "debt -- period -- that's been discharged." (Hrg. Trans. at 9.) Further, "if an order of the divorce court has not been entered, then by virtue of the bankruptcy discharge -- or even the bankruptcy filing, for that matter -- it can't become that [i.e., a § 523(a)(15) obligation]." (Hrg. Trans. at 14-15.) In effect, it seems to be the Debtor's position that a "bright line" regarding the divorce court's

- 7 -

ability to divide marital property (or impose marital property equalization debts) must be legally drawn as of the bankruptcy filing date. If not accomplished before the bankruptcy filing, the Debtor seems to assert it is too late for any divorce property settlement to occur.

A.   *Summary Judgment Standards.*

Ms. Lewis has moved for summary judgment. "A party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. BANKR. P. 7056 (incorporating FED. R. CIV. P. 56). The standards to grant or deny a party's request for summary judgment are well-established and need not be fully reiterated by this court. See, e.g., First Bank v. North Country Bank & Trust (In re Superior Used Cars, Inc.), 258 B.R. 680, 684-85 (Bankr. W.D. Mich. 2001) (court addresses the standards to grant or deny summary judgment, citing Supreme Court and Sixth Circuit binding precedent). In this adversary proceeding, it is noteworthy that this court is required to view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

In this opinion, *all* material facts asserted by the non-moving Debtor have been taken as true and correct. Examining the record as a whole, there are no material contested facts. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

"Metaphysical doubt" regarding a material fact is also insufficient to create a triable issue. Matsushita, 475 U.S. at 586, 106 S.Ct. at 1348. Therefore, the court may now decide Ms. Lewis' motion, and determine the legal issues.

B.    Existence of "Debt."

Both pre- and post-BAPCPA, a "debt" is defined as a "liability on a claim." § 101(12). To determine whether a "debt" exists, one must determine whether a "claim" exists. Congress intended "that the meaning of 'debt' and 'claim' be coextensive." Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130 (1990); accord Glance v. Carroll (In re Glance), 487 F.3d 317, 320 (6th Cir. 2007) (when a creditor holds a "claim" against a debtor, that debtor owes a "debt" to the creditor) (citation omitted).

Also, both pre- and post-BAPCPA, a "claim" is defined as:

(A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)    right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Section 101(5).

The language in the Bankruptcy Code demonstrates Congress' intent "to adopt the broadest available definition of 'claim.'" Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154 (1991) (citing Davenport, 495 U.S. at 558, 563-64, 110 S.Ct. at 2126, 2130-31, 2133-34); accord In re Glance, 487 F.3d at 320 (also stating that the broadest possible definitions of "debt" and "right to payment" are intended by Congress).

- 9 -

Buttressing the definitions of "debt" and "claim," BAPCPA added a new definition of a "domestic support obligation." § 101(14A). A "domestic support obligation" is a "debt" that "accrues before, on, or after the date of the order for [bankruptcy] relief" and includes any "interest that accrues on that debt as provided under applicable nonbankruptcy law." Id. However, the specific "debt" must be "owed to or *recoverable by a spouse, former spouse [or designated other persons].*" § 101(14A)(A) (emphasis supplied). To be a "domestic support obligation" it is also required that the debt be "in the nature of alimony, maintenance, or support . . . of such spouse [or] former spouse . . . without regard to whether such debt is expressly so designated." § 101(14A)(B). The "domestic support obligation" may be established "before, on, or after" the bankruptcy filing "by reason of applicable provisions of a . . . divorce decree . . . [in] an order of a court of record . . . ." § 101(14A)(C). It should be noted that the definition does *not* require the order *by* a divorce court to be "final" or "nonappealable." Also, a "domestic support obligation," often referred to as a "DSO," need not be established before a bankruptcy case is filed; a DSO may be created at any time regardless of when a bankruptcy case is commenced.

Under the Bankruptcy Code, a mortgage obligation may be considered as two separate debts. The first debt component is comprised of a debtor's *in personam* liability; the second debt component is the *in rem* liability which exists when a debtor has an interest in real property which is subject to the mortgage. "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor *in personam* – while leaving intact another –

namely, an action against the debtor *in rem*." Johnson, 501 U.S. at 84, 111 S.Ct. at 2154. Because a mortgage interest is a claim, it is beyond question that the mortgage interest is also a "debt." Davenport, 495 U.S. at 558, 110 S.Ct. at 2130. The *in personam* and *in rem* rights constitute "nothing more or less than an enforceable obligation." Davenport, 495 U.S. at 559, 110 S.Ct. at 2126. Accord In re Glance, 487 F.3d at 321 (the debtor "does not have personal liability on the promissory notes but he continues to have *in rem* liability on the liens;" the debtor need not "be personally liable on a claim for it to be valid").

Applying the Bankruptcy Code definitions, the Debtor owes, or may owe, a number of different debts. Under the Temporary Order imposed prepetition by the state court, the Debtor owes Ms. Lewis (or for the benefit of Ms. Lewis) the first mortgage installment payments as they become due; he owes the minimum monthly installment payment on the American Express credit card debt when each installment becomes due; and he owes one-half of the minimum monthly installment payment on the Capital One credit card debt when each installment becomes due. Without regard to the state court's Temporary Order, the Debtor owes *in rem* debts to the holder of the first mortgage and the holder of the second mortgage. However, because of his discharge, the Debtor is not now *personally* obligated to pay the credit card companies to which he was jointly indebted to with Ms. Lewis. Of importance to the issues addressed in this opinion, the Debtor also owes debts to Ms. Lewis, regardless of whether any particular debt may be characterized as support (DSO) obligation, a property settlement obligation, a joint debt, an *in personam* debt, or an *in rem* debt.

- 11 -

The court must now address whether the Debtor's obligations imposed by the Temporary Order are dischargeable or not.[7]

C.   *Are the Debts Imposed by the Temporary Order Dischargeable or Not?*

   1.   *Support.*

Prior to BAPCPA, a debt owed "to a spouse, former spouse, or child of the debtor, for . . . support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record" was generally nondischargeable.   § 523(a)(5) (pre-BAPCPA).[8]   It was required that the determination of the debt be "made in accordance with state or territorial law by a government unit."   Id.   In Michigan, determination of whether a debt constituted "support" was often made by the state divorce court.

It was not uncommon for an issue to arise as to whether an obligation imposed was really "support" or something else, such as a property settlement. See, e.g., Sorah v. Sorah (In re Sorah), 163 F.3d 397 (6th Cir. 1998) (support); Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517 (6th Cir. 1993) (debt assumption by hold harmless); Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir. 1983) (same).   In this trilogy of opinions, decided over fifteen years, the Sixth Circuit wrestled with what constituted "support" and the treatment of hold

---

[7] Eventually, a determination of dischargeability or nondischargeability may also be required regarding the state court's final divorce judgment which will determine the support obligations, if any, and which may divide the marital property or impose property settlement equalization debts upon the Debtor and/or Ms. Lewis.   Although this opinion may provide guidance whether those debts will be discharged or not, this court need not now decide those future debt issues.

[8] Exceptions existed when a debt, under specified circumstances, was assigned to another entity.

harmless provisions in divorce decrees, culminating with the often quoted phrase "if something looks like a duck, walks like a duck, and quacks like a duck, then it probably is a duck." Sorah, 163 F.3d at 401. More to the point, bankruptcy courts were directed to examine "indicia" of support including, but not limited to, (1) the "label" in the divorce judgment, order or agreement, (2) whether a direct payment or assumption of a third party debt was contemplated, and (3) whether the payment would be terminated upon such contingencies as death, remarriage or eligibility for Social Security benefits. Id.

The post-BAPCPA support nondischargeability language now simply states that a DSO debt is nondischargeable. Therefore, one must closely examine the definition of a DSO. § 101(14A). Is the debt in the nature of support regardless of linguistic designation? This judge believes that Sorah, even assuming it is no longer binding, supplies the "indicia" that should be focused upon. When was the obligation imposed? Post-BAPCPA, this question is no longer important – support obligations may be imposed (or eliminated) at any time. § 101(14A) (the debt may accrue before, on, or after the filing of a bankruptcy petition). Is a final divorce decree or judgment required? It seems not. First, the debt need not be established; it is sufficient if the debt is "subject to establishment" without reference to the bankruptcy filing date. § 101(14A)(C). Second, the DSO may be in "an order of a court of record." Id. Finally, the debt must be "owed to or recoverable by" designated persons or entities including a "spouse, former spouse, or child of the debtor." § 101(14A)(A).

- 13 -

Upon first reading, the Temporary Order appears ambiguous.  The original order explicitly states that Ms. Lewis' "request for spousal support is denied for the reasons stated on the record."  However, the "clarifying terminology" in the state court's amended order states that the Temporary Order obligations were intended as "family support."  Although the "label" used in the Temporary Order is unclear, it is noteworthy that the obligations in the order do not terminate upon a condition subsequent, such as Ms. Lewis' remarriage, death, or qualification for Social Security benefits.

Under these facts, the court holds that the obligations imposed by the Temporary Order are not "support."  Therefore, those debts are *not* nondischargeable under § 523(a)(5).

2.    *Property Settlement.*

BAPCPA substantially changed the nondischargeable debt standards under § 523(a)(15).

Pre-BAPCPA, property settlements were generally presumed nondischargeable subject to two very broad exceptions -- the so-called "inability to pay" exception, see, e.g., Clair, Griefer LLP v. Prensky (In re Prensky), 416 B.R. 406, 409 (Bankr. D.N.J. 2009), and the so-called "balancing test," see, e.g., Damschroeder v. Williams (In re Williams), 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008).  The majority of cases decided under § 523(a)(15) ruled the creditor had the burden to initially show the debt to be nondischargeable but a debtor, as an affirmative defense, had the burden to show that one or both of the exceptions applied.  Armstrong v. Armstrong (In re Armstrong), 205 B.R. 386, 391 (Bankr.

W.D. Tenn. 1996) (discussing majority and minority views of burden of proof); In re Smither, 194 B.R. 102, 107 (Bankr. W.D. Ky. 1996) (explaining why burden of proof shifts to a debtor to prove inability to pay and/or balancing of the equities).

BAPCPA has eliminated the exceptions contained in the prior version of § 523(a)(15). The simplified statutory provision now requires limited specified elements of proof: (1) a debt is owed "to a spouse, former spouse, or child of the debtor;" (2) the debt is not a DSO as described in § 523(a)(5) (which incorporates the definition in § 101(14A)); and (3) the debt "is incurred by the debtor in the course of a divorce or . . . divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." § 523(a)(15) (post-BAPCPA). Based upon the teachings of Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991), and consistently with pre-BAPCPA decisions, Ms. Lewis has the burden to prove the nondischargeability elements required by § 523(a)(15).[9]

Looking at the uncontested facts in this adversary proceeding, the debts in the Temporary Order are not DSO debts. Also, it appears that the Temporary Order obligations arise from an "order of a court of record." However, it is questionable whether the obligations are owed "to a spouse, former spouse, or child of the debtor."

---

[9] However, the Debtor no longer has an "inability to pay" affirmative defense. What the Debtor should be required to pay will be decided by the state trial court based presumably, in part, on what the Debtor is able to pay.

The Temporary Order requires the Debtor to make direct payments to third parties, i.e., the holder of the first mortgage, MBNA and Capitol One. These obligees are not the "spouse." Does it make a difference?

In Gibson v. Gibson (In re Gibson), 219 B.R. 195 (Bankr. 6th Cir. 1998), a well-reasoned and persuasive opinion, the Sixth Circuit BAP held that the language of pre-BAPCPA § 523(a)(15) was satisfied even though an Ohio Dissolution Decree required a direct debt payment to a third party and that the decree (and Separation Agreement upon which it was based) lacked "hold harmless" or other indemnification language. Gibson, 219 B.R. at 205. Based upon Gibson's holding, one might conclude that the direct pay obligations in the Temporary Order in this adversary proceeding are nondischargeable. However, a careful reading of Gibson mandates closer inquiry.

In Gibson, the BAP also held "that an analysis which determines the effect of applicable nonbankruptcy law is required in determining whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15)." Gibson, 219 B.R. at 203 (citations omitted).

Examining Ohio "applicable nonbankruptcy law," the BAP noted that a "separation agreement merges into, and is superseded by, the domestic relations court's order." Gibson, 219 B.R. at 204 (citations to Ohio law omitted). After merger of the separation agreement into the state court's final decree, "all causes of action under the separation agreement are extinguished and replaced by postjudgment remedies to enforce the decree." Id. Further,

> It might be noted that the liability of each party to [the third party] under the original Note was unaffected by the Dissolution Decree.

- 16 -

> Ms. Gibson and the Debtor remained jointly liable on the Note to [the third party] exactly as they had been prior to the dissolution. *As between the Debtor and Ms. Gibson, however, the domestic relations court's entry of the Dissolution Decree had significant new legal consequences.* The entry of the Dissolution Decree extinguished all pre-existing obligations of the parties to each other, whether those obligations existed under the Separation Agreement or otherwise. The Separation Agreement incorporated into the Dissolution Decree replaced those obligations with new ones fully enforceable as a judgment of the domestic relations court. Further, in the Dissolution Decree, the Debtor incurred an additional obligation in favor of Ms. Gibson to pay any and all debts to his parents, including the Note to [the third party]. This obligation is fully enforceable by Ms. Gibson against the Debtor. Finally, and most significantly, Ms. Gibson obtained, as a result of applicable Ohio law, a new right to payment and related enforcement rights, all of which were incurred by the Debtor in connection with the parties' Separation Agreement as incorporated into the domestic relations court's Dissolution Decree.

Gibson, 219 B.R. 204-05 (emphasis in original).

Does Michigan domestic relations law permit a divorce court to order a direct payment to a third party instead of a "hold harmless" obligation or indemnification obligation? If so, may this occur in a Temporary Order or is a *final* divorce decree or order required? This court is well aware that the facts in Gibson, decided under Ohio law, which involved a separation agreement signed by both parties, substantially differ from the facts in this adversary proceeding.

What is Michigan law? The Debtor argues while "a Michigan court may allocate debts between the parties, . . . it may not compel a party to pay the debt to a third party." (Debtor's Legal Memorandum at 5.) In support of his position, the Debtor has cited two Michigan cases. This court has read those cases and also conducted limited independent research.

In <u>Krueger v. Krueger</u>, 88 Mich. App. 722, 728 N.W.2d 514 (1979), a dispute arose between a decedent's son and the decedent's mother regarding entitlement to life insurance proceeds of approximately $43,000. In a prior divorce judgment, arising from an agreement between the decedent and his ex-spouse, a provision was included which required the decedent to designate his son as the life insurance beneficiary until the son reached 21 years of age or graduated from college. This was done even though the obligation was not characterized as support. Later the decedent changed his beneficiary to his mother. His death then occurred before his son was 21 years old. Who was entitled to the insurance proceeds -- the son or the mother? Stated differently, was the provision in the divorce judgment binding upon the mother?

In <u>Krueger</u>, the Michigan Court of Appeals summarized Michigan law relating to property conveyances in divorce proceedings.

> We have no quarrel with the proposition that the circuit court has no jurisdiction in a divorce case to compel a party to convey property or a property interest to a third person, even a child of the parties, or to adjudicate claims of third parties. The Supreme Court has so held on many occasions. <u>See</u>, <u>e. g.</u>, <u>Yedinak v. Yedinak</u>, 383 Mich. 409, 175 N.W.2d 706, 63 A.L.R.3d 360 (1970), <u>Rex v. Rex</u>, 331 Mich. 399, 49 N.W.2d 348 (1951). Were this an appeal or separate suit by the husband attacking the judgment after such a disposition had been forced on him, we would probably be required to hold in his favor. <u>Flynn v. Flynn</u>, 367 Mich. 625, 116 N.W.2d 907 (1962).

<u>Krueger</u>, 88 Mich. App. at 724-25, 278 N.W.2d at 515. However, under the specific facts of <u>Krueger</u>, the Michigan Court of Appeals determined the general rule was inapplicable.

In <u>Hoffman v. Hoffman</u>, 125 Mich. App. 488, 336 N.W.2d 34 (1963), the general rule stated in <u>Krueger</u> was followed. The trial court's order compelling a

payment to a third party was reversed because of lack of jurisdiction. <u>Hoffman</u>, 125 Mich. App. at 490-91, 336 N.W.2d at 35.

In a divorce action in Michigan,

> [T]he trial court's jurisdiction is limited to the dissolution of the marriage, and to matters ancillary to the marriage's dissolution, such as child support, spousal support, an equitable division of marital assets, and the award to one spouse of the other spouse's property in certain circumstances. So, in a divorce action, the trial court lacks the authority to compel a party to convey property or a property interest to a third person, even a child of the parties, or to adjudicate claims of third parties.

<u>Reed v. Reed</u>, 265 Mich. App. 131, 158, 693 N.W.2d 825, 842 (2005) (citations and internal quotation marks omitted).

In this adversary proceeding, the Debtor makes a persuasive argument that he cannot be obligated to directly pay the first mortgage or the designated credit card bills. <u>But cf. Burckhalter v. Burckhalter (In re Burckhalter)</u>, 389 B.R. 185, 190 (Bankr. D. Colo. 2008) ("It is clearly within the power of the Colorado courts to enforce the [Debtor's] agreement to pay the [credit card debt], with or without a hold harmless provision . . . .").

This court declines to decide the direct payment issue for a number of reasons. First, Ms. Lewis has not briefed this issue. Second, the undersigned bankruptcy judge is not an expert on Michigan divorce law. Third, and most importantly, if the state court has concurrent jurisdiction over the nondischargeability issue presented under § 523(a)(15), it may be much better suited to decide the issue.

D.     *Domestic Relations Exception to Federal Jurisdiction.*

More than 150 years ago, in 1859, the Supreme Court announced a policy, now often called the "domestic relations exception," resulting in federal courts having "no jurisdiction over suits for divorce or the allowance of alimony." Ankenbrandt v. Richards, 504 U.S. 689, 693, 112 S.Ct. 2206, 2209 (1992) (citing and explaining Barber v. Barber, 21 How. 582, 16 L.Ed. 226 (1859)).  There is no reason for this court to summarize the history or explain the Supreme Court's analysis of the genesis and ratification of the domestic relations exception in this opinion.  It is sufficient to quote,

> We conclude, therefore, that the domestic relations exception, as articulated by this Court since Barber, divests the federal courts of power to issue divorce, alimony, and child custody decrees.

Ankenbrandt, 504 U.S. at 703, 112 S.Ct. at 2215.

In this adversary proceeding, no divorce decree has been issued by the state court and this court lacks jurisdiction to issue any judgment.  Abstention by this bankruptcy court is proper.  See Part IV.F. below.

Also, in accordance with the BAPCPA amendments, the automatic stay does not apply to "the commencement or continuation of a civil action or proceeding . . . for the establishment or modification of a order for domestic support obligations . . . [or] for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate . . . ."  § 362(b)(2)(A).

Therefore, (1) not only does this court lack jurisdiction over the pending marriage dissolution and support issues, but (2) both parties are free to continue

to litigate those issues in the state court without impediment by the automatic stay.

Whether this court has jurisdiction to determine division of marital property is a different question. In *dicta*, the Supreme Court states that the "better reasoned views among the Courts of Appeals have similarly stated the domestic relations exception [is] *narrowly* confined to suits for divorce, alimony, or child custody decrees." Ankenbrandt, 504 U.S. at 703, n.6, 112 S.Ct. at 2215. The statement, coupled with the applicability of the stay to division of property of the estate, which often will include a debtor's interest in marital property, leads this court to believe it has jurisdiction to divide marital property. Should it do so?

The court recognizes that the determination of spousal or child support and the division of the marital property are intertwined. However, the issue of division of the marital property is also closely related to determination of "property of the estate" under § 541. On the other hand, this court is mindful of the Supreme Court's consideration of policy issues related to divorce proceedings.

> As a matter of judicial economy, state courts are more eminently suited to work of this type [e.g. deployment of social workers to monitor compliance] than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

Ankenbrandt, 504 U.S. at 704, 112 S.Ct. at 2215 (citation omitted).

After considering the limited authorities reviewed, this court believes the better interpretation is that although (1) subject matter jurisdiction over division of marital property exists under 28 U.S.C. § 1334(a) and (b), it is almost inconceivable why abstention would not be appropriate under 28 U.S.C. § 1334 (c)(1). This court will abstain. See Part IV.F. below.

E.   Concurrent Jurisdiction Over Nondischargeability Issues.

1.   Prior to BAPCPA Amendments.

Pre-BAPCPA, § 523(c) stated in pertinent part that "the debtor shall be discharged from a debt of a kind specified in [§ 523(a)(2), (4), (6) or (15)], unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the [bankruptcy] court determines such debt to be excepted from discharge under [§ 523(a)(2), (4), (6) or (15)]." § 523(c)(1) (pre-BAPCPA). To obtain an exception to discharge determination, an adversary proceeding is required. FED. R. BANKR. P. 7001(6). In a chapter 7 case, to determine the dischargeability of a debt covered by § 523(c), a complaint must be filed in the bankruptcy court "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 4007(c). However, to determine the dischargeability of a debt not covered by § 523(c), a complaint "may be filed at any time." FED. R. BANKR. P. 4007(b) (which also permits a closed case to be reopened, if necessary, to file a complaint).

The "district courts shall have original and exclusive jurisdiction of all cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(a). In western Michigan, the district court has provided that all cases, and proceedings arising under,

- 22 -

arising in, or related to the Bankruptcy Code, are referred to this bankruptcy court.   28 U.S.C. § 157(a); L.R. 83.2(a) (W.D. Mich.).   With regard to civil proceedings arising under, arising in, or related to a case under the Bankruptcy Code, the district courts, and the bankruptcy courts to which referrals have been made, have original but *not exclusive jurisdiction.*   28 U.S.C. § 1334(b).   The debtor-creditor relationship between the Debtor and Ms. Lewis is related to the Debtor's bankruptcy case.   The pending divorce action, predominately involving dissolution of the marriage, determination of support, and division of marital property, is a "civil proceeding."   "Original" but "not exclusive" jurisdiction means that concurrent jurisdiction exists, except as precluded by the "domestic relations exception."

Under pre-BAPCPA bankruptcy law, because of the interplay between 28 U.S.C. § 1334 and § 523(c), the state court could (1) *not* hear and decide whether a property settlement debt was nondischargeable but (2) could hear and determine issues involving nondischargeability of support debts.   See, e.g., Armstrong v. Armstrong (In re Armstrong), 205 B.R. 386, 391 (Bankr. W.D. Tenn. 1996) (based upon § 523(c), a bankruptcy court "has exclusive jurisdiction to determine if the debt in question is nondischargeable" under § 523(a)(15)); In re Smither, 194 B.R. 102, 106 (Bankr. W.D. Ky. 1996) (§ 523(c) grants concurrent jurisdiction over § 523(a)(5) support issues but exclusive jurisdiction exists over § 523(a)(15) property settlement issues); Thaggard v. Pate (In re Thaggard), 180 B.R. 659, 661-62 (M.D. Ala. 1995) (state courts have concurrent jurisdiction over § 523(a)(5) nondischargeability matters); Hohenberg v. Hohenberg (In re

Hohenberg), 143 B.R. 480, 483 (Bankr. W.D. Tenn. 1992) (a state court has concurrent jurisdiction with bankruptcy courts to determine whether a debt is nondischargeable under § 523(a)(5) as support); Dodge v. LaCasse (In re LaCasse), 238 B.R. 351, 354 (Bankr. W.D. Mich. 1999) ("In § 523(a)(5) matters the bankruptcy court has concurrent jurisdiction with state courts.") (citing In re Morales, 128 B.R. 526 (Bankr. E.D. Mich. 1991)).

2.      *After BAPCPA Amendments.*

BAPCPA made one small change to §523(c)(1) which has a major ramification. *It deleted the references to § 523(a)(15).* Therefore, like support nondischargeability determinations, the bankruptcy courts and the state courts now have concurrent jurisdiction over property settlement nondischargeability determinations.

Based upon the interrelationship between 28 U.S.C. § 1334(b) and § 523(c)(1), as modified by BAPCPA, this court holds that state courts have concurrent jurisdiction with this bankruptcy court over nondischargeable debt determinations to be decided under §523(a)(15). Under current law, state courts may decide nearly all divorce and domestic relations nondischargeability issues regardless of whether the obligation is for "support" or for a "property settlement."

F.      *Relief from Stay and Abstention.*

When this bankruptcy case was filed, the Debtor and Ms. Lewis were parties to a pending divorce action in the State of Michigan, Kent County Circuit Court. The divorce was in its infancy -- based upon the known record, the state court had only entered, and then clarified, its Temporary Order. The pending

- 24 -

divorce action will require a marriage dissolution, a determination of whether

alimony, maintenance and support shall be awarded (or not awarded), and a

division of the marital property between the parties.

> With regard to spousal support:

> In deciding whether to award spousal support, factors the trial court should consider include "the length of the marriage, the parties' ability to pay, their past relations and conduct, their ages, needs, ability to work, health and fault, if any, and all other circumstances of the case." The [state] trial court should make specific factual findings regarding the factors that are relevant to the particular case. The primary purpose of spousal support "is to balance the incomes and needs of the parties in a way that will not impoverish either party." Spousal support is to be based on what is just and reasonable under the circumstances of the case.

Korth v. Korth, 256 Mich. App. 286, 289, 662 N.W.2d 111, 113 (2003) (citations

omitted).   As explained above, this court lacks jurisdiction to award spousal

support, if any.   However, the future needs of the parties may vary based upon

the amount of marital property awarded, over which this court has jurisdiction.

> With regard to the division of the parties' marital property:

> The distribution of property in a divorce is controlled by statute. In granting a divorce, the court may divide all property that came "to either party *by reason of the marriage. . . .*" When apportioning marital property, the court must strive for an equitable division of increases in marital assets "that may have occurred between the *beginning* and the end of the marriage." Thus, the [state] trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets. This distinction between marital and separate estates has long been recognized in this state. Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party [except for two statutory exceptions].

Reeves v. Reeves, 226 Mich. App. 490, 493-94, 575 N.W.2d 1, 2-3 (1998) (citations omitted and emphasis in original); accord Korth, 256 Mich. App. at 291, 662 N.W.2d at 114-15.

The separate property of the Debtor is property of the bankruptcy estate. § 541(a). Similarly, the Debtor's interest in the marital property is also property of the estate. Id. The post-BAPCPA automatic stay applies to division of marital property that is property of the estate. § 362(b)(2)(A)(iv) (exception). Should the division of the parties' martial property be decided by this bankruptcy court or the state divorce court?

In White v. White (In re White), 851 F.2d 170 (6th Cir. 1988), the Sixth Circuit Court of Appeals addressed the issue of whether the automatic stay should be modified to permit the state divorce court to identify marital property and to divide it between the debtor-husband and his wife. The wife commenced the Ohio state divorce proceedings on February 7, 1985. The debtor-husband "countered by instituting Chapter 11 proceedings in the bankruptcy court," which blocked the divorce action because of the automatic stay imposed by § 362. In re White, 851 F.2d at 171. The wife requested relief from stay to permit "the state court to make an appropriate division of the marital estate which, of course, also constitutes the [debtor-] husband's bankruptcy estate." Id.

The bankruptcy court modified the automatic stay to permit the divorce action to proceed in the Ohio state court. On appeal, the district court affirmed.

After a preliminary discussion of a jurisdiction issue, the Sixth Circuit observed:

- 26 -

> It is appropriate for bankruptcy courts to avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.

In re White, 851 F.2d at 173 (quoting In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985) and In re Graham, 14 B.R. 246, 248 (Bankr. W.D. Ky. 1981)) (internal quotation marks omitted).  Given the language of § 362(d) (relief from stay for "cause"), it was proper for the bankruptcy court to defer to "the divorce court's greater expertise on the question of what property belongs to whom." In re White, 851 F.2d at 173. "The provisions for lifting the stay found in § 362(d) should be deemed to apply in these circumstances for the limited purpose of allowing the state court to exercise its exclusive domestic relations authority, including decisions concerning fair allocation of the marital estate." In re White, 851 F.2d at 174.  Further, the Sixth Circuit recognized that, in some instances, "we are concerned that the Bankruptcy Code could otherwise be abused as a weapon in a marital dispute." In re White, 851 F.2d at 174.  However, the Sixth Circuit did *not* establish a *per se* rule to lift the automatic stay; it held that the decision would be left to the bankruptcy court's reasonable discretion.[10] Id.

This bankruptcy court may also determine to abstain from hearing a "particular proceeding" in the "interest of justice, or in the interest of comity with

---

[10] As noted in the facts above, this court granted relief from stay on August 26, 2009.  The Debtor appealed this court's order on September 6, 2009, and the court believes the appeal remains pending.  No stay pending appeal has been entered by this court or the district court.  The Debtor and Ms. Lewis are each now free to continue the state court divorce proceedings.  The district court will determine whether the stay modification was proper.  Even assuming the district court reverses this court's stay modification order, it is unlikely to affect the divorce action because of the grant of the Debtor's discharge and the subsequent automatic termination of the stay. § 362(c)(2).

- 27 -

State courts or respect for State law," when the proceeding is related to a case under the Bankruptcy Code.   28 U.S.C. § 1334(c)(1).   Abstention may be appropriate and "is tailored for situations where the bankruptcy court will necessarily become entangled with issues regarding alimony, child support or other family matters." In re Thaggard, 180 B.R. at 663 (quoting Carver v. Carver, 954 F.2d 1573, 1579 (11th Cir. 1992)) (also noting that requiring a bankruptcy court to "second guess" the state court on divorce matters "could produce conflicting court decrees further aggravating an already delicate situation").

As permitted by the Sixth Circuit in White, this court has already modified the automatic stay to permit the parties to continue the divorce action to identify the marital property and divide it between the parties.  With regard to the state court's Temporary Order and the "direct payment" provisions, those obligations are *not* "support" under §523(a)(5).  As to whether those obligations may be nondischargeable property settlement obligations, "regular" debts, or void obligations under Michigan law, this court shall abstain from determining that type of issue.  The state court, with far greater expertise in divorce matters, is authorized to decide those nondischargeable debt issues.    28 U.S.C. § 1334(c)(1); § 523(a)(15) and (c).

G.    *Ancillary Issues Raised or Anticipated.*

After the state court issues a final support and division of marital property judgment, nondischargeable debt issues may arise or exist.  It is premature for this court to opine on "support" or "property settlement" obligations that have not

- 28 -

yet been decided.[11] In re Hohenberg, 143 B.R. at 484.  Also, because the state courts now have concurrent jurisdiction over divorce-related nondischargeable debt issues, unless the case is a chapter 13, it is unlikely that this court will ever be requested to decide any possible nondischargeable debt issues.  With very limited exceptions,[12] *the bankruptcy court is no longer in the divorce and domestic relations business.*

Ms. Lewis' continued actions in the state divorce court do not violate the automatic stay because (1) relief from stay has been already granted permitting the identification and division of marital property, and (2) there is an exception to the automatic stay for the commencement or continuation of a civil action for a DSO and to dissolve the marriage.  § 362(b)(2)(A).  Finally, even though the Debtor's discharge has been granted, given the analysis in this opinion and the court's prior order, the discharge injunction imposed by § 524(a) is inapplicable.

## V.    CONCLUSION.

With limited exceptions, there is no longer any reason for this bankruptcy court to continue to be involved in the divorce and domestic relations proceedings.  This court is unable, pursuant to the domestic relations exception to federal jurisdiction to dissolve a marriage or determine spousal or child support (if any).  Regarding the division of marital property, it will almost always be

---

[11]  Ms. Lewis has requested that this court determine that any support or property settlement obligations imposed in a final divorce judgment shall be nondischargeable. This court declines to now do so.

[12]  See, e.g., § 1328(a) (property settlement debts remain dischargeable upon grant of chapter 13 discharge); Corzin v. Fordu (In re Fordu), 201 F.3d 693 (6th Cir. 1999) (trustee may avoid and recover fraudulently transferred property in connection with divorce decree); § 507(a)(1) (payment of DSO priority claims).

appropriate for a bankruptcy court to abstain.   Finally, Michigan courts have concurrent jurisdiction over non-dischargeable debt issues, whether under § 523(a)(5) (support obligations) or § 523(a)(15) (property settlement obligations).

In this adversary proceeding, this court determines that:

1.     The direct payment obligations owed by the Debtor under the state court's Temporary Order are not nondischargeable support obligations under § 523(a)(5).

2.     Abstention under 28 U.S.C. § 1334(c)(1) is proper and the state court may determine the validity, non-validity, dischargeability, or nondischargeability, of the Temporary Order's direct payment obligations under Michigan law and § 523(a)(15).

3.     Ms. Lewis' request that this court decide a *future* issue of dischargeability or nondischargeability under a *future* state court final divorce judgment or order is denied.

4.     The Debtor's request for a determination that Ms. Lewis has violated the automatic stay imposed by § 362(a), or the discharge injunction imposed by § 524(a), is denied.

A separate order consistent with this opinion shall be entered.

_____
Honorable James D. Gregg
Chief Judge

Dated this 24th day of February, 2010
at Grand Rapids, Michigan